UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JASON PRICE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   No. 4:10CV1738 AGF |
| | ) |
| STEVE LARKINS, et al., | ) |
| | ) |
|     Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the parties' cross motions for summary judgment. Plaintiff, a prisoner, brought this action under 42 U.S.C. § 1983, alleging that Defendants, who are prison staff, failed to adequately protect him from an attack by another inmate in violation of the Eighth Amendment. After reviewing the briefs and the evidence, the Court finds that Defendants are entitled to qualified immunity. As a result, the Court will enter judgment in favor of Defendants.

**Standard**

Under Rule 56(a), a motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In reviewing a motion for summary judgment, this Court is required to view the facts in a light most favorable to the non-moving party and to give the non-moving party the benefit of any inferences that can logically be drawn from those facts.

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). Moreover, this Court is required to resolve all conflicts in favor of the non-moving party. Robert Johnson Grain Co. v. Chemical Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). This Court is, however, "'not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.'" Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996) (quoting White v. McDonnell Douglas Corp., 904 F.2d 456, 458 (8th Cir. 1990)).

**Background**

In his complaint, Plaintiff alleged that Defendants were deliberately indifferent to his safety because they allowed offender James Lenoir to attack and injure him on January 23, 2010. Plaintiff was confined at the Eastern Reception Diagnostic and Correctional Center ("ERDCC") at that time. Defendants were all employed at ERDCC at the time of the incident. Defendant Steve Larkins was the Warden of ERDCC; Defendant Larry Short was a functional unit manager; Defendant Wescott was a sergeant; and Defendants Holifield, Miller, and Williford were correctional officers at the institution.

Prior to the attack, both Plaintiff and Lenoir were assigned to one-man cells in administrative segregation. It was in this wing where Plaintiff met Lenoir for the first time. The restrictions in administrative segregation prevented Plaintiff and Lenoir from having physical contact, but they spoke to one another. Sometimes Lenoir acted very friendly with Plaintiff and the other inmates on the wing, and sometimes he would threaten Plaintiff and

the other inmates. Plaintiff testified at his deposition that Lenoir threatened him and the other inmates, saying that he would "kill" them, "assault" them, "whoop" them, or kill their families. Lenoir treated all of the inmates the same way. Plaintiff says he sent informal "kites" to Defendants Wescott and Short requesting to be transferred to a different wing because of Lenoir's threats, but those requests were denied. Wescott and Short deny receiving any requests from Plaintiff to be moved away from Lenoir. Plaintiff did not file any formal grievances regarding the issue, and he did not put Lenoir on his enemy list. Plaintiff says he did not put Lenoir on his enemy list because they were both in administrative segregation and he did not believe that the enemy list applied to prisoners in administrative segregation.

    Lenoir had a lengthy history of assaulting prison staff. Lenoir had once attempted to assault Defendant Williford with a weapon. On several occasions, Lenoir attempted to pull officers' arms into his food port to assault them. Lenoir attempted to incite a riot, telling other prisoners that they outnumbered the guards and could take them. And on at least eight occasions, Lenoir slipped his handcuffs off of his wrists while detained at ERDCC. On several of these occasions, Lenoir either assaulted prison staff or destroyed the handcuffs. Lenoir had slipped his handcuffs off of his wrists on January 22, 2010, the day before he assaulted Plaintiff, and he had to be physically restrained. There is no evidence that Lenoir had previously attacked other inmates at ERDCC.

    Defendants have submitted surveillance video of the January 23, 2010, incident. On that day, haircuts were available to offenders in Plaintiff's administrative segregation wing's

common area.  Wescott and an inmate barber entered the area first, followed by the second inmate barber.  The barbers then set up their equipment and placed a plastic chair near a table in the common area.  After the barbers were finished setting up, Defendant Miller escorted Plaintiff into the wing.  Plaintiff's hands were handcuffed behind his back.  Plaintiff sat in the plastic chair, and a barber placed a smock over Plaintiff.  At this time, Wescott was seated at the table, just a few feet away from Plaintiff.

Just after Plaintiff sat down, Defendant Holifield escorted Lenoir into the wing.  Lenoir's hands were handcuffed behind his back.  Holifield secured Lenoir to a restraint bench a few feet from Plaintiff.  There was a pole between Plaintiff and Lenoir.  Plaintiff turned his head towards Lenoir after he sat down.  However, Plaintiff says that he did not see Lenoir because the pole obstructed his view.

The second barber had gone to get a chair.  When he returned, he was accompanied by Defendant Williford.  The barber placed the chair by Lenoir, and Holifield escorted Lenoir from the bench to the chair.  Lenoir's hands were handcuffed behind his back.  As the haircuts proceeded, Wescott, Miller, and Williford were seated at the table next to Plaintiff, and Holifield was standing behind Plaintiff and Lenoir.

Within two minutes of sitting down, Lenoir slipped one hand out of his handcuffs.  Very quickly, Lenoir leapt from his chair and charged towards Plaintiff.  Lenoir struck Plaintiff with a closed fist and collided with him, taking him to the ground.  The assault happened very quickly, taking only about one second.  All four Defendants reacted swiftly,

converging on Lenoir just after he reached Plaintiff.  Defendants quickly separated Lenoir from Plaintiff and secured him.

After the incident, Plaintiff appeared to lie limply on the ground for several minutes. The medical response team arrived in about three minutes.

The medical records indicate that Plaintiff was unresponsive after the attack.  When the medical response team arrived Plaintiff "appeared to be convulsing and complained of a headache."  Plaintiff was not cooperative with nursing staff and indicated that he wanted an aspirin before he would answer questions.  The team noticed a dime-sized injury on Plaintiff's forehead. It appears from the medical notes that Plaintiff was not examined by a physician after the attack.  Plaintiff saw a physician on January 29, 2010.

The physician's examination notes indicate that Plaintiff complained of a headache as well as neck and back pain.  The doctor found Plaintiff's neck to be tender and that he had a back spasm in his upper back.  The doctor diagnosed Plaintiff with "post altercation cervical dysfunction."  Plaintiff was prescribed the "lumbar sprain plan" and naproxen.

The medical records show that Plaintiff did not respond to the naproxen or other NSAIDs.  Plaintiff continued to complain of back pain as a result of the attack and various drugs were tried to control the pain.  As of August 24, 2011, Plaintiff had been placed in the chronic pain clinic and was prescribed Neurontin, which can be used to treat chronic pain. The Neurontin has eased Plaintiff's pain.

As a result of the incident, Lenoir received a conduct violation and was given thirty days of administrative segregation time. The incident was also referred to a prosecutor for potential criminal charges.

Following the incident, special security precautions were implemented with respect to Lenoir, such as having all of his escorts done in leg restraints and under the supervision of two staff members.

## Discussion

The Eighth Amendment prohibition against cruel and unusual punishment imposes upon correctional officers the obligation to protect inmates from harm by other inmates. See, e.g., Smith v. Marcantonio, 910 F.2d 500, 501 (8th Cir.1990). An Eighth Amendment violation is actionable under § 1983 if the plaintiff shows that the "defendants were deliberately indifferent to his constitutional rights, either because they actually intended to deprive him of some right, or because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates." Falls v. Nesbitt, 966 F.2d 375, 377-78 (8th Cir.1992) (quoting Andrews v. Siegel, 929 F.2d 1326, 1330 (8th Cir.1991)). Mere inadvertence or negligence cannot support a claim under the Eighth Amendment. See Andrews, 929 F.2d at 1330. A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault. See Wright v. Jones, 907 F.2d 848, 850 (8th Cir.1990).

Additionally, and significant for the purposes of this case, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability

if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer v. Brennan, 511 U.S. 825, 844 (1994); see Jensen v. Clark, 94 F.3d 1191, 1197 (8th Cir. 1996). "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Id. at 845.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Id. (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004)). "The more critical inquiry for qualified-immunity purposes is whether it was 'objectively legally reasonable' for the prison officials to believe that his conduct did not violate the inmate's clearly established Eighth Amendment right." Berry v. Sherman, 365 F.3d 631, 634 (8th Cir. 2004) (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987)).

Plaintiff argues that he is entitled to summary judgment because Lenoir had a well-documented history of violent and vicious behavior, including several incidents of slipping off his handcuffs. Plaintiff maintains that he told Defendants Wescott and Short that Lenoir had threatened him, and Plaintiff says he asked those Defendants to transfer him to a different wing. And Lenoir did attack and injure him. Plaintiff argues, therefore, that

Defendants knowingly subjected him to an objective and serious risk of harm when they placed Lenoir just a few feet away from him with only handcuffs to restrain him, which had been shown to be an ineffective method of restraint as recently as the day before the attack occurred.

Defendants argue that they are entitled to summary judgment because Plaintiff cannot meet either the objective or subjective component of his failure-to-protect claim. They argue that Plaintiff cannot meet the objective component because the facts fail to show that the risk of harm was imminent, as the attack came as a surprise to all of the parties. Defendants further argue that because Lenoir did not have a history of attacking other inmates, there was no reason to believe that Lenoir would attack Plaintiff on that day. Moreover, Defendants argue that Plaintiff has failed to show that he suffered from an objectively serious injury as a result of the attack. Defendants argue that Plaintiff cannot demonstrate the subjective component because the attack was a surprise to all of the parties, including Plaintiff. Defendants further argue that the surveillance video demonstrates that they immediately intervened and stopped the attack, which constituted a reasonable response. Finally, Defendants argue that Plaintiff's supervisory liability claims against Defendants Larkins and Short fail as a matter of law because Plaintiff is not entitled to relief on the underlying claim.

While Lenoir had an extensive history of assaulting correctional staff, there are no conduct violations in the record showing that he ever assaulted another inmate. And Plaintiff has not produced any other evidence showing that Lenoir was violent towards other inmates before January 23, 2010. Lenoir was sometimes friendly with Plaintiff, and he treated

Plaintiff the same way he treated other offenders. Defendants testified in their affidavits that before January 23, 2010, they were not aware of any animosity between Lenoir and Plaintiff. And Plaintiff did not put Lenoir on his enemies list, which would have served to notify Defendants that Plaintiff felt he was in fear of Lenoir. Nor is there any evidence that Plaintiff ever filed a formal grievance regarding Lenoir. Although Plaintiff says he sent informal kites requesting to be transferred to a different wing from Lenoir, there is nothing in the record to substantiate this claim or show that Defendants actually received these kites. But assuming receipt of the informal kits, for purposes of Defendants' motion, on this record, the evidence does not support a finding that Defendants were aware that placing Lenoir in close proximity to Plaintiff while handcuffed and with four correctional officers present constituted a substantial risk of harm to Plaintiff. As a result, Plaintiff has failed to show that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment.

In any event, regardless of whether Defendants knew that placing Lenoir in close proximity to Plaintiff constituted a substantial risk of harm to Plaintiff, the surveillance video plainly shows that Defendants responded reasonably to the attack. They responded swiftly and with sufficient force to prevent Lenoir from injuring Plaintiff any more than he had with his initial blow. They also immediately called for medical assistance, which arrived within three minutes. Prison officials launched an investigation into the matter, referring the case to the local prosecutor. And Lenoir's security protocol was upgraded so that he would have to wear leg shackles and be accompanied by at least two guards when out of his cell.

As a result, the Court finds that Defendants responded reasonably to the incident, and therefore, Defendants did not violate Plaintiff's Eighth Amendment rights. See Farmer, 511 U.S. at 844; Fisher v. Lovejoy, 414 F.3d 659, 664 (7th Cir. 2005) (prison official was not deliberately indifferent when he responded to inmates' attack on the plaintiff inmate by placing all the inmates against a wall, even though the plaintiff was then stabbed by another inmate, because his response was reasonable under the circumstances); Wilkerson v. Johnson, 330 Fed. Appx. 257, 259 (2nd Cir. 2009) (finding no constitutional violation where plaintiff was assaulted but defendants were standing nearby and intervened immediately); Patmon v. Parker, 3 Fed. Appx. 337, 338-39 (6th Cir. 2001) (prison officers acted reasonably in responding to altercation between inmates, and thus did not violate Eighth Amendment rights of inmate who was stabbed during altercation, where officers responded to site of altercation as soon as radio call was made, ordered assailant to disarm himself, removed inmate from scene as soon as he fell, and took assailant into custody as soon as he dropped his weapon). Because there was no underlying constitutional violation, Defendants are entitled to qualified immunity. The Court will, therefore, enter judgment in favor of Defendants.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [Doc. 97] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment [Doc. 80] and motion to appoint counsel [Doc. 79] are **DENIED**.

A separate Judgment will be filed with this Memorandum and Order.

Dated this 22nd day of May, 2012.

                                                */s/ Audrey G. Fleissig*
                                                AUDREY G. FLEISSIG
                                                UNITED STATES DISTRICT JUDGE